Matthias, J.
 

 The sole question presented in this case is whether the guard’s tower, cyclone fencing, sidewalks and floodlights, erected by the government of the United States upon land occupied by it for military purposes, under a lease by the terms of which such structures remain the property of the government and may be removed at the expiration of the lease, are exempt from taxation and should therefore be placed by the county auditor on the “list of exempted property,” separate and apart from the land covered bv the lease.
 

 The leased tract containing 1.13 acres is triangular
 
 *573
 
 in shape and is adjacent to land owned by the United States government. That tract had previously formed a part of the railroad company’s right-of-way, with which it is connected by a wooden bridge, and various spur tracks crossing the leased ground from the railroad company’s right-of-way now serve a government ordnance plant.
 

 It is the view of appellant that the question to be determined is “whether property privately owned might be subject to exemption if used for an exempt purpose.” Appellant cites the decision of this court in the case of
 
 City of Cincinnati
 
 v.
 
 Lewis, Aud.,
 
 66 Ohio St., 49, 63 N. E., 588, as authority for the proposition that “an exempt ownership and an exempt use must coincide in order to effect the exemption of the property from taxation,” and, therefore, that there can be no separation of land and improvements either in the listing of property for taxation or in determining the question of exemption from taxation.
 

 The view of appellee is that the structures in question, which were erected upon the leased tract of land, are the property of the United States; and that, therefore, ownership and use do coincide as required for exemption from taxation; and that such structures were properly declared exempt by the Board of Tax Appeals.
 

 The application for exemption designates the structures referred to as “real property”'and the appellant, the auditor of Hamilton county, relies upon the claim that- the structures are fixtures and, therefore, taxable as a part of the real property of the railroad company.
 

 It is obvious, however, from the terms of the lease that the ownership of the specified structures is in the government of the United States. Such property can be taxed as belonging to the railroad company, only if, under the laws of this state, lands and fixtures at
 
 *574
 
 tacked thereto may not in any instance be separately taxed.
 

 In support of his contention that these structures must be listed and taxed as real estate belonging to the railroad company, the appellant relies upon the provisions of Sections 2583 and 5322, General Code. The former makes it the duty of the county auditor to prepare lists of the owners of real property and place “separately, in appropriate columns opposite each name, the description of each tract, lot or parcel of real estate, the value of each tract, lot or parcel and the value of the improvements thereon, if any.”
 

 The latter section provides in substance that the terms “real property” and “land” include not only land itself “but also, unless otherwise specified, all buildings, structures, improvements, and fixtures of whatever kind thereon, and all rights and privileges belonging or appertaining thereto.”
 

 An examination of the various taxing statutes of this state discloses a requirement that land and improvements thereon be separately valued and the value of each separately stated upon the auditor’s duplicate.
 

 Section 5554, General Code, with reference to the valuation of real property, provides that “he [county auditor] shall note in his plat book, separately, the value of all * * * buildings, which exceed one hundred dollars in value * # # which shall be carried out as a part of the value of such tract.”
 

 Section 5570, General Code, requires a separate listing of property exempt from taxation, and further requires a valuation of “such houses, buildings, property, and lots and tracts of land at their true value in money, in like manner as he is required to value other real property. ’ ’
 

 It is to be observed that the various statutory provisions on the subject clearly manifest legislative pur
 
 *575
 
 pose and intent that property be not listed for taxation against anyone other than the true owner thereof. Clearly there is no legislative requirement that land owned by a private owner shall be taxed for the value of fixtures owned by the government and used for governmental purposes.
 

 The precise question to be decided here is whether the structures in question owned by the United States government shall be exempted from taxation, where the land upon which they are placed is taxable. It is obvious from the record presented in this case that if the position of the appellant be sustained, a tax would in fact be lévied against the United States, for it would cause such increase of rentals as would be essential to reimburse the land owner for the taxes he would be required to pay upon the structures which under the terms of the lease are the property of the United States government.
 

 It is argued that if not removed by the tenant of his own volition or upon the requirement of the owner, these structures ‘ ‘ would remain on the land and would become the property of the owner.” However, we are necessarily dealing with the conditions as of 1943. Clearly at that time these structures were not the property of the railroad company, but were the property of the United States government..
 

 The decision by the Supreme Court of the United States in the recent case of
 
 United States
 
 v.
 
 Allegheny
 
 County, 322 U. S., 174, - L. Ed., -, 64 S. Ct., 908, seems decisive of the instant case. The government there entered into a contract with the Mesta Machine Company for the production of large field guns. Machinery and equipment in addition to that owned by the Mesta Machine Company were essential for the purpose stated. The contract entered into by and between the government and the Mesta Machine Company provided that the necessary equipment was to
 
 *576
 
 be procured by the government at its cost and expense and by it leased to the Mesta company, and that the company ivas to manufacture guns at a fixed price. The machinery procured by and belonging to the government was bolted to concrete foundations on land owned by the Mesta company. Taxes assessed against the Mesta company included the machinery above referred to.
 

 The trial court sustained the Mesta company’s contention against taxation of that machinery. The Supremo Court of Pennsylvania held to the contrary. Upon appeal, the United States Supreme Court reversed the Supreme Court of Pennsylvania. After directing attention to the fact that the assessors valued Mesta’s land as land and the government’s machines as machinery and added the latter to the former, the court said: "We discern little theoretical difference, and no practical difference at all, between what was done and what would be done if the machinery were taxed in form. Its full value was ascertained and added to the base to which the annual rates would apply * * *. We hold that the substance of this procedure is to lay an ad valorem general property tax bn property owned by the United States.”
 

 In answer to the contention made in that case, that the whole value of the property may be reached by taxation since the impact of the tax is upon the owner of the land, the court declared that "renunciation of any lien on government property itself, which could not be sustained.in any event, hardly establishes that it is not being taxed. ' The fact is that the lien on the underlying land is increased because of and in proportion to the assessment of the machinery. If the tax is collected by selling the land out from under the machinery, the effect on its usefulness to the government would be almost as disastrous as to sell the machinery itself. ’ ’
 

 
 *577
 
 As its conclusion, tlxe court stated in the opinion as follows:
 

 “We hold that govenxmeixt-owned property, to the full extent of the government’s interest therein, is immune from taxation either as against the government itself or as against oxie who holds it as a bailee.”
 

 The facts in the instant case present a situation more favorable to the land owner than did the record in the
 
 Mesta case,,
 
 for there, as is stated in the opiixion, “it [tlxe Mesta company] is a bailee for mutual benefit.” Here the land owner has no title to, interest in, control of, or authority over the structures involved.
 

 It follows that the decision of the Board of Tax Appeals is in all respects correct and is affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Zimmerman, Bell, Williams, Turner and Hart, JJ., concur.